IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DENNIS HETZEL,

          OPINION AND ORDER

       Plaintiff,

          15-cr-751-bbc

   v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Dennis Hetzel filed this suit seeking social security disability benefits for the period April 13, 2010 through July 4, 2013. He contends that he was disabled during this period by diabetes, amputated toes, chronic kidney disease, edema, neuropathy and a back impairment, compounded by obesity.

      This is plaintiff's second application for benefits. His first application was denied by the commissioner, but remanded to the Social Security Administration for further consideration after I found that the administrative law judge had failed to give proper consideration to objective factors related to the amount of time plaintiff could engage in physical activities such as standing.

      Before the administrative law judge could hear the matter again, the Social Security Administration determined that plaintiff had become disabled as of July 5, 2013. This

1

meant that, on remand, the only question before the administrative law judge was to determine whether defendant's ability to work from April 13, 2010, the date on which he alleged he had become disabled, through July 4, 2013. On rehearing, the administrative law judge found that plaintiff had been able to engage in substantial gainful activity during this time period because he could have performed the representative jobs the vocational expert identified, despite the limitations on his ability to stand and walk for more than 15 minutes at a time and to stand for more than one hour a day and his inability to perform the full range of sedentary work.

In this appeal, plaintiff contends that the administrative law judge erred again by (1) assessing plaintiff's credibility improperly; (2) failing to give proper weight to the opinion of Dr. Steven Kirkhorn; and (3) relying on flawed vocational evidence. After considering the parties' arguments, I conclude that the administrative law judge reached the correct result.

BACKGROUND

Following the September 2014 remand of the case and the agency's decision that plaintiff had been disabled as of July 5, 2013, the administrative law judge held a new hearing on July 14, 2015 to determine whether plaintiff had been disabled during the period in question. Plaintiff testified at the hearing as did a vocational expert who identified jobs available in the market place that he believed plaintiff could handle.

During the time at issue, plaintiff had diagnoses of diabetes, chronic kidney disease, edema, neuropathy and a back impairment, compounded by obesity. He had lost three toes

on his right foot after they had become infected and were amputated in 2007 and 2008, making him less steady on his feet. He testified that until January 2010, he had worked for a family business that provided truck accessories, such as hitches, toppers, bed liners and trailers, doing light mechanical work on the accessories and also changing tires and replacing wheel assemblies. After leaving that business, he tried some additional work, such as sorting potatoes at two different potato farms and operating a forklift at a cranberry processor, but found himself unable to be on his feet all day or work in cold weather.

Plaintiff testified that he had to stay off his feet and elevate his legs, that he had diabetes, high blood pressure and kidney disease. AR 1157. At the beginning of the period at issue, he weighed 290 pounds, but began losing weight after bariatric surgery in 2012. He testified that, on a regular basis, he could stand only about three hours a day in an eight-hour day, AR 1160, but he also testified that he would not be able to work at a job that allowed him to sit and stand at will but required him to stand a total of two hours a day and lift the equivalent of a gallon of milk for two hours. AR 1161. If he had to work at such a job, his legs and back would start bothering him. AR 1162. He testified that he felt unsteady on his feet, walked with a limp and had to elevate his legs for five to six hours a day to relieve the swelling and pain. AR 1155-57. He reported having had insulin reactions with high blood sugars three to four times a week during the period in question, making it difficult to regulate his high blood sugars. AR 1157-58. He also had a diagnosis of diabetic retinopathy, which caused blurriness and floaters in his eye that affected his vision and required him to wear glasses all the time, although it did not cause him difficulty seeing

things below him or to the side and it did not interfere with his night vision. AR 1159-60.

The administrative law judge determined that plaintiff had the severe impairments of toe amputation and degenerative disc disease and diabetes, compounded by his obesity, but that he did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in the Social Security Regulations. Although plaintiff testified that he had high blood sugars twice a week, the administrative law judge was not persuaded by this testimony. Plaintiff's doctors had reported consistently throughout the period 2008 through 2012 that his diabetes was well controlled, with the one exception of the period right after his 2012 weight loss surgery when he stopped taking his insulin temporarily, but those high levels tapered off to normal after he resumed the insulin on a regular basis. AR 1136 (citing AR 1112, 1120, 1122).

The administrative law judge found that plaintiff had the residual functional capacity to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), in a limited number of jobs identified by the vocational expert. These jobs existed in significant numbers in the national economy even though plaintiff could not do more than occasional stooping, bending, crouching, climbing of stairs or ramps, crawl, kneel or climb ladders, scaffolds or ropes, work at unprotected heights or around dangerous machinery, needed to be off task five to ten percent of the workday in addition to regularly scheduled breaks and was limited to walking no more than 15 minutes at one time and standing and walking for no more than one hour a day. Accordingly, the administrative law judge concluded that plaintiff had not been disabled during the period from April 13, 2010 through July 4, 2013.

In reaching his conclusion, the administrative law judge considered record evidence that plaintiff had complained of low back pain in July 2010 after starting a job in which he had to lift pallets repetitively and that his doctor, Joseph Arias, told him that he was probably deconditioned, prescribed Tylenol #3 for him to help with the pain and said that if it persisted, he would refer plaintiff to physical therapy. AR 1136 (citing AR 454-55). In November 2010, Dr. Arias referred plaintiff to a physical therapist after x-rays showed plaintiff had no fractures or dislocations. Id. (citing AR 673). Between visits to Arias, plaintiff saw a disability consultant in October 2010. Dr. John T. Henningsen reported that plaintiff had complained of having had constant low back pain for three years and had said he had not seen a doctor for it or had x-rays. Id. (citing AR 503). Henningsen noted that plaintiff complained of not being able to walk more than 150 feet before his back hurt. Id. He found a little tenderness in plaintiff's low back, but no abnormalities, AR 1137 (citing AR 504-05), and he concluded that plaintiff could probably do light mechanic work "if it didn't require a lot of lifting or standing." AR 505.

The administrative law judge also took into account evidence of plaintiff's ability to exercise on a regular basis. For instance, when plaintiff saw Dr. Arias for follow up in February 2011, he reported doing his physical therapy exercises twice a week at most and feeling fine most days. AR 1136 (citing AR 697). On October 20, 2011, he told a nutritional therapist to whom he had been referred by Dr. Arias that he was riding an exercise bicycle 30 minutes a day. AR 1137 (citing AR 1003). On January 19, 2012, he reported doing active yard work and walking outdoors three times a week, id. (citing AR

1030); on April 26, 2012, he told his doctor at a post operative appointment following his April 10 gastric bypass operation, that he had been walking and using a stationary bike for exercise, id. (citing 1094); in June 2012, he told his doctor he had been using the stationary bike and walking at least 1-2 miles a day, id. (citing AR 37); on August 3, 2012, he told a nurse practitioner he was walking a faster pace for 30 minutes a day, id. (citing AR 1403); on November 8, 2012, he told his doctor that he had resumed walking one mile seven days a week, after spending time remodeling his trailer, which had kept him fairly active, id. (citing AR 1410, 1413). On December 6, 2012, plaintiff told a nurse practitioner that he had been walking at least a mile a day since his gastric bypass. Id. (citing AR 32).

Plaintiff saw Dr. Steven Kinkhorn in March 2012 for a disability assessment. AR 1049. Afterwards, Kinkhorn wrote that plaintiff needed to elevate his legs for as much as 25% of the day and required a cane or other assistive device for walking. Id. at 968. The administrative law judge gave the opinion little weight because plaintiff saw Kinkhorn only once; the doctor's notes made no mention of plaintiff's need for a cane or elevation of his legs and they provided no support for the opinion he provided in the disability evaluation form he completed; other doctors reported plaintiff walking well with a normal posture and gait; and plaintiff himself testified at his administrative hearing that he was not using a cane when he saw Kinkhorn. AR 1138, citing AR 978, 994, 999, 1024, 1056, 1165.

The administrative law judge issued his second decision on September 25, 2015, noting that the new hearing was limited to determining whether plaintiff had been disabled before July 5, 2013 and after his alleged onset date on April 13, 2010. He concluded that

6

plaintiff had not been disabled during this period.

## OPINION

A. The Administrative Law Judge's Assessment of Plaintiff's Ability to Work

Plaintiff's first challenge to the administrative law judge's ruling is that his credibility assessment was flawed. However, a closer look at plaintiff's argument reveals that his objection is more accurately described as a challenge to the administrative law judge's assessment of the medical record. For example, plaintiff complains that the administrative law judge cherry-picked the record, ignoring evidence that would support a finding of disability. Plt.'s Br., dkt. #13, at 13.

For example, plaintiff alleges that the administrative law judge overlooked evidence of his disabling kidney disease, neuropathy and edema in his feet. This allegation is not borne out by the medical record. As of April 2010, plaintiff's doctor found his kidney problems stable and did not note any symptoms relating to kidney disease. AR 445. As for plaintiff's feet, he did have three infected toes on his right foot amputated in 2007 (before the period under review in this order), but he did not complain of problems with them after that time. At a consultative hearing, Dr. Henningsen noted that plaintiff had peripheral neuropathy but that the treatment records showed no limitations resulting from the condition. In addition, Dr. Henningsen's examination showed that plaintiff's diabetes with peripheral neuropathy and retinopathy was well controlled. AR1137( citing AR 503-05).

Finally, the administrative law judge noted that the relevant records for the period

7

from April 2010 to July 5, 2013 did not support plaintiff's claims of edema in his feet, at least for that time period. The records showed that plaintiff had diagnoses of edema and neuropathy but did not indicate that he had any particular symptoms of those conditions. Id. To the extent that the administrative law judge disagreed with plaintiff's claims of disability, his findings were well supported.

### B. Dr. Kirkhorn's Opinion

In the opinion entered earlier in this case, I found that the administrative law judge had erred in not identifying any portions of the record that supported his finding that Dr. Kirkhorn's notes were inconsistent with the disability form he prepared. In his new decision, the administrative law judge explained his finding more thoroughly. He noted his agreement with Kirkhorn's opinion that plaintiff was limited to sedentary exertion, with limited standing and walking and a total of either standing or walking for no more than two hours. However, "giving the claimant the benefit of the doubt, not because it is required by the medical evidence," AR 1138, the administrative law judge imposed a lower limit for jobs that plaintiff could perform: standing or walking for only fifteen minutes at one time, with a total of only one hour of standing or walking. Plaintiff argues that this limit is stricter than the general limitation for sedentary work, which is true, but irrelevant. The question is whether this stricter limit does or does not rule out all jobs that can be performed with minimal exertion. Whether it does is an issue to be taken up in the next section.

Finally, the administrative law judge gave little weight to Kirkhorn's opinion that

plaintiff would have to elevate his legs for 15% to 25% of the time because he found no medical evidence to support such a finding. In addition, he found no evidence in the record to support Kirkhorn's belief that plaintiff would need to use a cane or other assistive device. Id. To the contrary, plaintiff testified at his hearing that he did not use a cane and his health providers had reported consistently that he had a normal gait and posture. The administrative law judge's new opinion satisfies the concerns about the treatment of Kirkhorn's report identified in this court's 2014 opinion.

### C. Evidence from Vocational Expert

In finding that plaintiff was not disabled, the administrative law judge relied on the vocational expert's opinions that plaintiff could have performed six jobs: order clerk, surveillance system monitor, cashier, telemarketer, answering service operator or small parts assembler and that these jobs existed in relatively large numbers in Wisconsin, ranging from 1000 jobs in small parts assembly work to 12,500 jobs in telemarketing. In forming his opinions, the vocational expert relied on information from the Wisconsin Department of Workforce Development, Labor Market Projections.

Plaintiff challenged the method the expert used to estimate the number of jobs available in Wisconsin for any of the six jobs he believed plaintiff could perform, pointing out that the broad categories of the federal government's Standard Occupational Classification system are not broken into individual jobs listed in the Dictionary of Occupational Titles. He believes that the result of this failure to break down the job

categories is that many jobs listed within a particular category, such as Cashier II, for example, consist of 18 different DOT codes, covering both sedentary and light positions, making it impossible for the administrative law judge to ascertain the validity and accuracy of the vocational expert's testimony in this case.  As a result, he contends, the testimony in this proceeding was not reliable and therefore, the administrative law judge erred in depending upon it.

Plaintiff attacks the method the expert used to estimate the number of surveillance system monitor positions that would be available to plaintiff in Wisconsin and in the national economy.  The expert testified that five different kinds of positions fell into that category, that he "looked specifically, out of all those jobs based on the classification of job studies [and concluded that] statistically about 10 percent are sedentary." AR 1181-82.  In doing this, he followed the directions in the Dictionary of Occupational Titles, which provides persons in his position a factual basis for reducing the broad numbers.  AR 1182-83.  However, the expert did not stop there.  He considered other sources as well, including the Wisconsin Department of Workforce Development, Labor Market Projections; the Standard Occupational Classification System, http://www.bls.gov/soc,; and the Specific Occupation Selector Manual, www.uspublishing.net/sample_stats2.html.  AR 1173-83.

Plaintiff takes issue with the expert's approach, arguing that his estimate was inaccurate as to the number of jobs available for surveillance system monitors and that, in the instance of order clerks or cashiers, his testimony was not sufficient to allow the administrative law judge to determine how the expert had arrived at the number of jobs he

listed. The Court of Appeals for the Seventh Circuit has criticized the accuracy and usefulness of the job information available to vocational experts and others who rely upon it. E.g., Hermann v. Colvin, 772 F.3d 1110, 1113 (7th Cir. 2014) (harboring doubts about sources of vocational expert testimony on jobs plaintiff could perform); Browning v. Colvin, 766 F.3d 702, 709 (7th Cir. 2014) (calling job descriptions used by Social Security Administration outdated and lacking in foundation). In this case, however, unlike in Heerman, the expert did not confine the sources for his testimony to the Dictionary of Occupational Titles (4th ed. 1991), but expanded his search for relevant information.

I am not persuaded that the administrative law judge erred in relying on the vocational expert's calculations of positions available in Wisconsin for cashiers, order clerks or surveillance system monitors. However, I note that, even if he did, plaintiff has not challenged the vocational expert's testimony about jobs in telemarketing, switchboard answering service operators and small parts assembly. That testimony was adequate to allow the administrative law judge to find that substantial, gainful work of which plaintiff was capable of performing existed in significant numbers (16,300) in the region where plaintiff lives.

ORDER

IT IS ORDERED that plaintiff Dennis Hetzel's motion for summary judgment, dkt. #12, is DENIED and the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's application for disability insurance benefits and

supplemental security income for the period from April 13, 2010 through July 4, 2013 is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

 Entered this 7th day of October, 2016.

           BY THE COURT:
           /s/
           BARBARA B. CRABB
           District Judge